**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES LINLOR,<br><br>                          Plaintiff,<br>v.<br>FIVE9, INC.,<br><br>                          Defendant. | Case No.: 17CV218-MMA (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; AND**<br><br>[Doc. No. 10]<br><br>**GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>[Doc. No. 12] |

On February 3, 2017, Defendant Five9, Inc. removed this action from the Superior Court of California, County of San Diego. *See* Doc. No. 1. In the First Amended Complaint ("FAC"), Plaintiff James Linlor, proceeding *pro se*, alleges Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"). *See* Doc. No. 1. Defendant moves to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 10. Plaintiff has also filed a "motion to substitute," in which Plaintiff requests leave to amend the FAC to add a new defendant. *See* Doc. No. 12. The Court found these matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss, Doc. No. 10, and **GRANTS** Plaintiff's motion for leave to amend the FAC, Doc. No. 12.

# BACKGROUND[1]

The FAC asserts claims for violations of the TCPA against Defendant Five9, Inc. ("Defendant Five9") and other unnamed defendants, whom Plaintiff refers to as "John Does #1-#9." Plaintiff alleges Defendant Five9 "is in the business of providing customer contact center solutions, including, but not limited to, predictive and autodialers, and inbound call management." *See* FAC, p. 3. Plaintiff alleges the unnamed defendants are "customers, employees, contractors, or agents working with or for or in some manner in partnership or as purchasers of [Defendant Five9's] services or products, or using [Defendant Five9's] customer contact services in any existing or novel way." *See* FAC, p. 4.

Plaintiff alleges that in approximately October 2016, "Plaintiff began receiving SMS texts to the Plaintiff's cellular telephone from the Defendants." *See* FAC, p. 2. Specifically, Plaintiff alleges he received "[a]t least five (5) text messages . . . during 2016 and January 2017." *See* FAC, p. 5. Plaintiff alleges that the "repetitive nature of the text messages indicate that the Defendants' messages were made using an 'automatic telephone dialing system,' as defined by 47 U.S.C. § 227(a)(1)." *See* FAC, p. 5. The FAC states that Defendant Five9 "was identified as the teleco operator/agent responsible for an outbound # 855-790-6802 identified in SMS messages sent to the Plaintiff's cell phone." *See* FAC, p. 3. Plaintiff alleges he does not have a relationship with Defendants, did not provide his cellular telephone number to Defendants, and did not consent to be contacted.

Regarding Defendant Five9's liability, Plaintiff contends Defendant is vicariously liable for violating the TCPA because Defendant provides "the capacity for (and use of) an autodialing function" "as a feature of [Defendant Five9's] software," and provided such software to the unnamed defendants "who appear to have put together the text

---

[1] Because this matter is before the Court in part on a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the operative complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

messages to the Plaintiff's cellphone, including a phone # serviced by [Defendant Five9] for the resulting (hoped for) inbound calls in response to the marketing campaign, and for [Defendant Five9] to profit from the use of [its] software in creating the text messages." *See* FAC, p. 6. Plaintiff emphasizes that the unnamed defendants "initiated the text message 'calls' . . . to the Plaintiff's cellphone." *See* FAC, p. 6. Plaintiff contends that Defendant Five9 "manage[d]" the "toll-free number inbound calls" and "profit[ed] from the toll charges and software licensing fees associated with the use of [its] inbound call system, as a precursor to generating sales for the [unnamed defendants, as] recipients of the toll-free calls processed by" Defendant Five9. *See* FAC, p. 7.

Defendant moves to dismiss the FAC, arguing Plaintiff fails to sufficiently plead vicarious liability or a predicate TCPA violation, and that Defendant is immune from liability as a common carrier. Plaintiff moves for leave to amend to add a defendant, Futero, Inc., which Plaintiff believes is liable for violating the TCPA.

## LEGAL STANDARD

### A.     Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Twombly*, 550 U.S. at 545. The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth

of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). However, a *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Courts must construe such pleadings liberally. *Id.*

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

**B.     Rule 15**

Rule 15(a)(2) supplies the standard for amending pleadings within the scheduling order deadlines.[2] *See* Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), "a party may amend its pleading [] with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has stated:

---

[2] Neither the undersigned nor the assigned magistrate judge has issued a scheduling order in this case.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 1739451, at *3 (N.D. Cal. Apr. 22, 2013) (stating "the Ninth Circuit has stressed Rule 15's policy of favoring amendments").

## DISCUSSION

### A.  Motion to Dismiss

Defendant moves to dismiss the FAC with prejudice on three grounds. First, Defendant argues the FAC fails to sufficiently allege facts in support of Plaintiff's theory that Defendant is vicariously liable for allegedly unlawful text messages. Second, Defendant argues the FAC establishes that Defendant is "a common carrier caught in the crosshairs," and is accordingly immune from liability for violations of the TCPA. *See* Doc. No. 10. Third, Defendant contends the FAC insufficiently alleges a violation of the TCPA. After reviewing Defendant's arguments in support of its motion, and Plaintiff's arguments in response, the Court finds dismissal is proper for the reasons set forth below.

#### i.  Vicarious Liability

In the FAC, Plaintiff does not allege Defendant is directly liable for violating the TCPA, as Plaintiff admits Defendant did not send the text messages at issue. Rather, Plaintiff asserts Defendant is vicariously liable for TCPA violations. The Court agrees with Defendant that Plaintiff fails to allege facts to support a theory of vicarious liability.

The Ninth Circuit has assumed that "Congress intended to apply" "ordinary tort-related vicarious liability rules" to TCPA claims. *See Gomez v. Campbell-Ewald Co.*,

768 F.3d 871, 877 (9th Cir. 2014), *aff'd,* 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016) (deferring also to the Federal Communications Commission's ruling that there may be vicarious liability for TCPA violations under federal common law agency principles). In other words, a defendant may be vicariously liable for a third-party caller's TCPA violations where the plaintiff demonstrates an agency relationship between the defendant and the third-party caller. *Id.* Under traditional agency principles, "[a]n entity may be liable for actions it did not itself take when the unlawful acts were performed by an agent of the entity." *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845 JLS (BLM), 2017 WL 766548, at *6 (S.D. Cal. Feb. 28, 2017). "An agency relationship forms 'when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Trenz v. Sirius Xm Radio, Inc.*, No. 15CV0044 AJB (NLS), 2015 WL 11658715, at *2 (S.D. Cal. July 13, 2015) (quoting *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2015 WL 925892, at *4 (N.D. Cal. Mar. 2, 2015) (citing Restatement (Third) of Agency § 1.01 (2006)).

Here, Plaintiff does not allege a traditional agency relationship between Defendant and the unidentified entity or entities responsible for the text messages. The FAC does not allege Defendant had any control over any entity responsible for sending the text messages, nor that any entity acted in any way on Defendant's behalf. In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant "controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). "Agency means more than mere passive permission; it involves request, instruction, or command." *Id.* (quoting *Klee v. United States,* 53 F.2d 58, 61 (9th Cir. 1931)). Plaintiff merely alleges Defendant sold software to the entity responsible for sending the messages, and provided the entity with a toll free number

with which to receive responses to the messages. Thus, Plaintiff does not allege Defendant had express or actual authority over the entity that sent the alleged text messages.

Further, Plaintiff fails to allege either apparent authority or ratification, which may also give rise to vicarious liability. *See id.*; *Thomas*, 879 F. Supp. 2d at 1085; *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). Apparent authority "can only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied'" to the plaintiff's detriment. *Thomas*, 582 F. App'x at 679. Plaintiff does not allege that he "reasonably relied, much less to [his] detriment, on any apparent authority with which [Defendant] allegedly cloaked" the entity responsible for creating and sending the text messages. *See id.* at 679–80. Finally, Plaintiff fails to allege ratification. A principal may be liable "when it ratifies an originally unauthorized tort," but "the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *See id.* at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)). Plaintiff does not allege the existence of a principal-agent relationship, nor does Plaintiff allege Defendant somehow approved of another entity's violations of the TCPA.

In sum, the FAC fails to sufficiently allege Defendant is vicariously liable for allegedly unlawful text messages created and sent by an unnamed third party.

### ii. Common Carrier

Second, Defendant argues the FAC establishes that it is a common carrier exempt from TCPA liability. Generally, "users of [telecommunications] services, not the carriers providing the services, [are] held liable" under the TCPA. *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8776 n.83 (1992)). "Common carriers are not liable under the TCPA absent a 'high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions.'" *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 WL

778065, at *4 (W.D. Wash. Feb. 24, 2015). To determine whether an entity is a common carrier, courts inquire: "(1) Does the entity hold itself out indifferently to all potential users or, if serving a legally-defined class, hold itself out indiscriminately to serve all within that class; and (2) Does the entity allow customers to transmit messages of their own design and choosing?" *Id.* at *5.

However, based solely on the FAC, the Court is unable to make these determinations. The Court, like other district courts have done in analogous cases, declines to find as a matter of law, at the pleadings stage, that Defendant is a common carrier exempt from liability under the TCPA. *See, e.g.*, *Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100, 1104–05 (S.D. Cal. 2014) ("[W]ith only pleadings to go on and no discovery as to the precise relationship between CallFire and Legal Shield, it is simply too early in this litigation for the Court to affirmatively conclude that CallFire is the middleman it claims."); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 5324291, at *2 (N.D. Cal. Oct. 17, 2014); *Kauffman v. CallFire, Inc.*, No. 3:14-CV-1333-H-DHB, 2015 WL 11237468, at *1 (S.D. Cal. July 22, 2015) (stating that "whether CallFire is a common carrier is a factual issue better suited for resolution at summary judgment").

Accordingly, the Court finds Defendant's second grounds for dismissal unpersuasive at this stage in the proceedings.

### iii. Predicate TCPA Violation

Lastly, Defendant contends Plaintiff fails to sufficiently allege a violation of the TCPA. The TCPA makes it unlawful "for any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" to "a cellular telephone service" or "any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). Under the TCPA, the term "call" encompasses "both voice calls and text messages." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009). An automatic telephone dialing system ("ATDS") is defined as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §

227(a)(1).  "In reviewing the adequacy of ATDS allegations, courts consider whether, read as a whole, the complaint contains sufficient facts to show that it is plausible that [the] [d]efendants used an ATDS." *Vaccaro v. CVS Pharmacy*, Inc., 2013 WL 3776927, at *2 (S.D. Cal. 2013) (internal quotations and alterations omitted) (citing *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010)).

Here, the FAC does not allege the text messages were sent using an ATDS, but rather, states that the "repetitive nature of the text messages *indicate* that the Defendants' messages were made using an 'automatic telephone dialing system,' as defined by 47 U.S.C. § 227(a)(1)." *See* FAC, p. 5.  However, the allegation that Plaintiff received five text messages within the span of several months, on its own, is insufficient to allege the entity responsible for sending the text messages was using a device with the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator," and dial those numbers.  *See* 47 U.S.C. § 227(a)(1).  In other words, "Plaintiff fails to allege 'factual content that allows the court to draw the reasonable inference that the defendant' used a machine capable of random or sequential number generation, and the Court cannot fill the gap with speculation." *See Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX, 2015 WL 12806476, at *4 (C.D. Cal. May 8, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Without more, Plaintiff fails to state a plausible claim for violation of the TCPA, even construing Plaintiff's pleadings liberally.

**B.      Motion for Leave to Amend to Add New Defendant**

Plaintiff requests leave to add Futero, Inc. as a Defendant in this action.  *See* Doc. No. 12.  Defendant does not oppose Plaintiff's request.  At this early stage in the proceedings, courts must liberally grant leave to amend under Rule 15.  *See* Fed. R. Civ. P. 15.  Accordingly, the Court **GRANTS** Plaintiff's request for leave to amend the FAC to add Futero, Inc. as a Defendant.  Plaintiff may not add additional parties without leave of Court.

//

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss, and **DISMISSES** Plaintiff's TCPA claims without prejudice and with leave to amend. *See* Doc. No. 10. The Court **GRANTS** Plaintiff's motion for leave to amend the FAC to add Futero, Inc. as a defendant to this action. *See* Doc. No. 12. The Court further **ORDERS** that Plaintiff must file the Second Amended Complaint on or before **July 28, 2017**.

**IT IS SO ORDERED.**

Dated: July 11, 2017

Hon. Michael M. Anello
United States District Judge