1  James Linlor, pro per
2  PO Box 231593, Encinitas, CA  92023
   (858) 504-0584
3

4  FIVE9, INC. c/o Kelly Drye and Warren LLP
   Lee Brenner #180235
5  Los Angeles, CA  90067  (310) 712-6100

6
   Futero, Inc., Counsel not yet named
7  1500 W 13TH ST, UPLAND, CA 91786

8
                **UNITED STATES DISTRICT COURT**
9
                **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 JAMES LINLOR, pro se                    )   Case No.: 3:17-cv-00218-MMA-BLM
                                           )
12                                         )   **PLAINTIFF'S SECOND**
                                           )   **AMENDED COMPLAINT FOR**
13           Plaintiff,                     )   **VIOLATIONS OF AND**
                                           )   **RELATING TO THE**
14      v.                                  )   **TELEPHONE CONSUMER**
                                           )   **PROTECTION ACT ("TCPA"), 47**
15 FIVE9, INC.                             )   **U.S.C. § 227 et seq.**
                                           )
16 FUTERO, INC.                            )   JURY TRIAL REQUESTED
                                           )
17 JOHN DOES #1-#9                         )
                                           )
18           Defendants                     )
   _____)

19 1. Plaintiff files this timely Second Amended Complaint ("SAC") de novo in

20    accordance with the Court's Order of July 11th, 2017.

21                              CLAIMS

22 2. Plaintiff claims Defendants Five9, Inc. ("Five9") vicarious liability and

23    according liability for text message telemarketing, which is itself in violation of

24    TCPA.

25 3. Plaintiff claims multiple direct violations of the TCPA by Futero, Inc., for text

26    message marketing to Plaintiff's cellphones.

27 4. In total, Plaintiff has now received 16 (sixteen) text messages, which also

28    reference an unknown number of also unauthorized telemarketing phone calls.

                                    1

### COMPLAINT

Vicarious liability, agency, and control of manner and means

1. Recognizing the Court's Opinion, Five9 is alleged to control or had the right to control the manner and means of the text message campaign Futero, Inc. ("Futero") conducted via shortcode 61869 employing the Five9 controlled toll-free number 855-790-6802 (see Exhibits B & C).

   a. By manner and means Plaintiff refers to the formatting of the text message to include a reply mechanism (toll free number, formatted so as to be dialed as a single-touch by the recipient of the text message), which is critical and must be directed by Five9 for formatting and the specific number despite the increased cost for toll-free numbers, but importantly to Futero to reduce "friction" and achieve a higher response rate to their text message marketing than trying to capture leads solely through text message replies (voice return calls are a premium, but are integral to effectiveness for Futero; Five9 had to have use arguments similar to these to justify the toll-free method to Futero, which is effectively controlling in the <u>manner</u> -- which is with a toll-free number embedded, and <u>means</u> – which is how toll free numbers would be established, managed, routed/queued for operator response, and caller-ID, other caller-data, and statistical data relayed back for QoS and data mining for effectiveness of the text message campaign). Five9's control function over telephone and corresponding data/metadata in this situation proves their level of control.

   b. Five9 also receives a higher fee for toll-free numbers, due to the data and metadata transferred along with return calls, and increased billing mediation and cross-carrier interconnect charges that must be reconciled, and therefore compensated for as a business expense borne by Five9 on behalf of its customer Futero for return, inbound customer calls.

   c. A method for interested marketing recipients to contact Futero (despite the fact that Futero's text message marketing was illegal under the

TCPA), is critical. Futero clearly opted for a toll-free number mechanism for the reasons listed above. Not having any response mechanism makes the marketing campaign worthless (that is, without any way to convert marketing into sales and payments, plus repeat marketing information via the caller-IDs, and potential sales of marketing lists to other companies by Futero).

d. If Five9's involvement were not about controlling manner and means as explained, then Futero without Five9's guidance, constructive assistance, enablement, and operational involvement would not have received any toll-free number managed by Five9 (as proven in Exhibit B that the toll-free number was managed by Five9), nor having the toll-free number work as expected (call completion back from consumer recipients) across carrier cross-connects and rating/remediation engines, nor pass back customer calling data (including but not limited to caller-ID)/metadata to Futero from Five9). These are all aspects of manner and means where Five9 had to exert control over Futero. Futero could not control the manner and means itself – if Futero chose the toll-free number without being directed by Five9 as to what Five9 had set up, then the toll-free number would not function to receive calls, nor to route, or hold, or process calls during inbound burst volumes, nor pass back caller-ID information or other metadata from Five9 to Futero, which was already explained as critical for Futero's marketing campaign and collection of potential customers' data. And for all these services and activities, Five9 received payment from Futero. It is likely that this close financial as well as operational connection is what Five9 is trying to hide.

e. Toll-free numbers, more than regular phone numbers, require pre-use provisioning: pre-planning and coordination for DID (inbound trunk line) based on estimated call volumes, routing of calls, tracking and matching of inbound responding call numbers (which explain why Futero

3

would use toll-free numbers:  to capture and re-use any responding consumers' phone numbers for continued telemarketing, and/or to sell to other telemarketers).

f.  Five9 had to set up the toll-free number, provision it for capacity and routing, establish billing remediation and carrier cross-connects for billing.  To do this, Five9 had to request, instruct, or command that Futero use the exact toll-free number that Five9 had had to pre-provision and organize for billing, Five9 had to organize how databases from Five9 would capture and relay this data to Futero.

g.  This (above) is the essence of a principal-agent relationship, which Plaintiff alleges between Futero and Five9, with text messages sent by Futero under Futero's shortcode, with command and control of the message contend and data response mechanisms by Five9, and ratification by Five9 of Futero's following of Five9's instructions of what toll-free number to put in the text messages, and how Futero would receive caller-ID and other marketing recipient information back from Five9 to Futero for each marketing response received.

h.  Defining the use of a particular toll-free number, setting it up to receive burst-rate calls from text message, and transferring data back to Futero in a method requisitely defined by Five9 proves that Five9 controlled the manner (toll-free contact) and means (toll-free number setup and data transfer) for the marketing campaign.  Five had to specify ("command") whether CSV (comma separated value) or other XML electronic data interchange (EDI) format would be used, and if XML was commanded by Five9, the XSD (data dictionary) and setup requirements which only Five9 could define (as the data source provider) and had to provide per technical data-flows for manner and means to Futero.  Passive permission to use a toll-free number would not have any of the above-named functions (call receipt, capacity, caller-ID, etc) workable for Futero.

4

Five9 had to be an active participant and controlling agency for Futero. Five9's interactions with Futero go beyond the text message campaign. Five9 has also been responsible for managing and controlling the manner and means of other phone numbers for Futero, demonstrated in Exhibits B & C.

i. Ratification: After Futero composed the text message to be sent out via Futero's shortcode, Five9 still had to ratify and approve the toll-free number as being the correct number that Futero had included per Five9's direction, with this ratification and according apparent authority giving rise to vicarious liability by Five9 for Five9 to be responsible and ratifying for the sole customer-contact method for customers to respond to Futero.

j. Plaintiff knows the data above to be correct and is not merely conclusory from Plaintiff's background as an engineer and programmer/hacker through to executive (over >20 years) for global operational and billing support systems (OSS/BSS) for Ericsson and Hewlett-Packard, and Plaintiff's involvement with most nearly all worldwide telephony carriers' SS7 (signaling system 7 protocol, used for SMS short message service traffic) systems, and toll-free number linkages. Plaintiff has also set up toll-free numbers for use in mobile telephone billing systems (mobile payments), and has therefore had to estimate and organize capacity and billing requirements and linkages. Plaintiff is glad to provide engineering expertise to this case, and deep dive into telephony records and interconnect agreements, as needed, to aid in demonstrating manner and means of control for toll free numbers and usage in text message marketing campaigns, as well as proving ratification and detailed processes required as will be required in Discovery.

k. Plaintiff reasonably relied to Plaintiff's detriment, on the apparent authority with which Five9 cloaked the entity responsible for the text

5

messages eventually traced back to Futero.  No owning company was identified in the text message, and no owner for shortcode 61869 was initially visible via internet searches.  Plaintiff had to rely on requests only to Five9 to attempt to contact the message sender (text message replies could not be known to stop marketing, and that method is not recommended by security experts as it only tends to increase undesired marketing contacts by verifying a number as able to receive marketing. Five9 admitted (see Exhibit A) that they knew and could control/influence/assist Plaintiff in stopping the sending of marketing text messages, but refused to cooperate without a suspicious pre-disclosure grant of with-prejudice immunity, leaving Plaintiff at Five9's detriment by no other way to block SMS messages from the senders.  Plaintiff's wireless carrier did not provide an opt-out or blocking feature for unique shortcode numbers.  As noted in Exhibit A, Plaintiff queried, and Defendants refused to stipulate, that the text message sending information Defendants proposed to relay, was true and accurate. Therefore, Defendants were demanding dismissal with prejudice (de facto immunity) while potentially – or likely in Plaintiff's opinion – providing false information to Plaintiff, for which Plaintiff would not have any remedy after releasing Defendants Five9.

l. As a result of Five9's refusal to identify the sender of text messages from shortcode 61869 (see Exhibit A), Plaintiff received 16 text messages, which referenced further caller-ID-masked telemarketing phone calls in the text messages.  Case law and precedent state each individual call or text message as having Article III standing for harm and a cause of action, supporting Plaintiff's claim of detriment from marketing.

m. Per the 9th Circuit, finding that a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant

and a third-party caller." Plaintiff claims to have established this
relationship with substantiated evidence above, supporting remediable
claims.

2. Futero is identified as the text message sender through its SMS (Short Message
Service) shortcode 61869 ("61869"), which is also listed as owned by Futero,
Inc. on their website (see Exhibit B).

3. Five9 has been in contact with and is familiar with Futero, see Exhibit A, and as
evinced by the multiple toll-free phone numbers that Five9 is demonstrated to
service for Futero (see Exhibits B & C), which reasonably generate significant
income for Five9, and which are integral to Futero's business model), though
when Plaintiff initially filed this case, Plaintiff offered to drop Five9 from the
case, if Five9 cooperated and offered-up owner information for 61869. Five9
admitted their knowledge of, and a working relationship with the owner of
61869, but to Plaintiff's detriment, effectively demanded civil extortion from
Plaintiff by only agreeing to disclose the owner of 61869 if Plaintiff agreed to
an immunity deal (dismissing Five9 with prejudice) **before** identifying the
owner of 61869. This seemed odd, since if Five9 were not involved and would
be without liability, then Five9 would not be requiring an immunity deal for
cooperation, and Plaintiff would neither have an interest, nor cause of action, to
pursue Five9. Instead, to Plaintiff's detriment, Plaintiff was required to invest
several weeks of late-night work to find out the name of 61869's owner. Based
on this evidence, Plaintiff discovered that Five9 provides marketing command
and control vicarious liability with ratification for Futero, plus other telephony
services for Futero.

4. Defendant Five9, Inc. ("Five9") ignores the close business relationship and
specific transfer of consumers' data back to telemarketers (inherent in metadata
provided with the toll-free number managed by Five9 to its clients), constituting
vicarious liability and non-common carriage per case law guidelines, FCC
guidance, and 9th Circuit precedent.

7

Common Carrier Exemption not Applicable

5. Recognizing and agreeing with the Court's Opinion, Five9 is not a common carrier in this situation, but moreover, than as part of the means and control, and ratification demonstrated and claimed, that Five9 had a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions.

   a. Plaintiff has already claimed that Five9 was deeply involved in the manner and control of the phone numbers used as the means for marketing to sales conversion, along with associated data and metadata.

   b. Since Five9 provided the phone number used in the illegal text messages, and relay toll-free caller (consumer metadata) back to the telemarketer PLUS the same for a 2nd toll-free inbound calling number where they also participate in telemarketing data collection activities, and have knowledge of the telemarketer's illegal activity for now-named additional Defendant Futero, Inc. (see Exhibits B & C). Five9's collection and transmittal of consumer metadata, and Five9's charging the telemarketer for use of its systems to do so, overcome the common carrier exemption listed in Rinky Dink Inc. v. Electronic Merchant Systems Inc. (W.D. Wash. 2015), and Payton v. Voiceshot. (N.D. IL, 2016)   The 3rd prong of the Rinky Dink decision's common carriage classification is specifically overcome as Five9 *was+is* highly involved in the telemarketers' illegal marketing messages (which is defeating of common carriage by itself), but also *had+has* knowledge of the sender's allegedly illegal calling activities (e.g., "actual notice of the allegedly unlawful messages") because Five9 manages and receives payment for and relays back metadata about inbound calls induced by Futero from its text message marketing.  Five9 is not merely a "dumb pipe."  Five9 has to be aware of bursts of inbound calls resulting from marketing text message campaigns, to satisfy the FCC's Dish ruling, that Five9 "knew

8

(or should have known)" about the source of Five9's revenue from the recipient of Five9's software, or a telemarketing campaign spamming reasonably hundreds of thousands (or more) of consumers using Five9's advertised sequential number technology. Five9 provides more than common carriage due to this ***inbound*** toll-free phone number <u>and data relayed</u>, while profiting enroute, and showing a close business relationship (aka "high level of involvement" per Rinky Dink) between Five9 and John Doe telemarketers. Also contrary to Voiceshot, Plaintiff has never provided his phone number to Defendants.

Predicate TCPA Violation

6. Plaintiff claims that Futero is responsible for the predicate TCPA violation, based on the text messages sent to two cellphones owned by Plaintiff, with copies of the illegal text messages in Exhibit B.

7. Use of an automatic telephone dialing system ("ATDS") is demonstrated via the poor formatting of the message to try to incorporation a "string" variable, but which the sender incorrectly formatted, sending instead the string variable placeholder. Plaintiff is an expert in programming, and can explain how this substitution is supposed to occur and demonstrates use of an ATDS. However, the mere formatting in Exhibit B demonstrates that an automated (ATDS) system was being used.

8. Plaintiff recognizes the Court's concern over "only" receiving five spam (illegal per TCPA) text messages over several months, however:

   a. The 9th Circuit already found liability in 2017 where a single text message or phone call, where the intent of the call was to promote a product or service, was sufficient to provide standing; and,

   b. Plaintiff demonstrates that he has now received a total of 16 text messages (and possibly more than may be hidden but related to Futero, but not to Five9 because they do not use a toll-free phone number), with

several in the misconstructed format that demonstrated ATDS (see Exhibit C).

9. FCC guidance has confirmed that text messages are defined as "calls" and enforceable under the TCPA statute. Metadata passing as part of inbound calls serviced by Five9 (See Exhibit B) also supports culpability in FAC Par. 18 and 19 and disposal of any common carriage immunity due to close involvement.

10. Plaintiff has never had any sort of relationship or interaction with the Defendant nor has Plaintiff ever consented, in any manner, to the receipt of these telephone calls by the Defendant.

11. The persistent nuisance of Defendant's telephone calls (texts) constitutes an unlawful invasion of Plaintiff's privacy, though the 9th Circuit recently (in 2017) ruled that a single call or text supports Article III standing for an unlawful invasion of Plaintiff's privacy, and other case law that the intent of the call for telemarketing supports treble damages and listed in Remedies.

12. A text message is a "call" within the meaning of the TCPA statute, allowing the words "call" or "called" to be substituted interchangeably and without prejudice by or with any act relating to a "text message" throughout this Complaint. (Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009).

## PARTIES

1. Plaintiff James Linlor was and is a natural person residing in the County of San Diego, State of California. Plaintiff James Linlor is also a resident of Kansas, through property and businesses owned in that state.

2. Plaintiff is a "person" as defined by 47 U.S.C. § 153 (39).

3. Defendants FIVE9, INC. ("FIVE9"), is an individual, partnership, association, joint-stock company, trust, or corporation with a mailing address of

a. 4000 EXECUTIVE PKWY STE 400, SAN RAMON CA 94583 and an agent for service of process of DAVID HILL, 4000 EXECUTIVE PKWY STE 400, SAN RAMON CA 94583 and is therefore a "person" as defined by 47 U.S.C. § 153(39). At all times relevant herein, Defendants conducted business in the State of California and in the County of San Diego, and within this judicial district.

b. FIVE9 is in the business of providing customer contact center solutions, including, but not limited to, predictive and autodialers, and inbound call management, including toll-free numbers;

c. FIVE9 was identified as the teleco operator/agent responsible for toll-free #s 855-790-6802 and 855-579-9182 identified in SMS messages sent to the Plaintiff's cell phones.

## JURISDICTION AND VENUE

1. State jurisdiction is present in this action is brought under the TCPA, 47 U.S.C. § 227 *et seq,*, including §227(b)(3), (c)(5); Mims v. Arrow (10-1195 S.Ct. 565 (2012)).

2. Defendants removed this case to US District Court, over Plaintiff's objections. Plaintiff does not dispute District Court jurisdiction since caes law permits this removal, but referenced SCOTUS (particularly Justice Ginsberg's) comment that state courts are the more appropriate venue for TCPA violation adjudication.

## FACTUAL ALLEGATIONS

3. In or about October 2016, Defendants began sending texts to Plaintiff's cellular telephone number, [redacted]. At least sixteen (16) text messages (previously five listed in Plaintiff's FAC, which have increased as demonstrated in Exhibit B), were received by the Plaintiff during 2016 and

and C

11

2017.  Initially, Defendants are listed as a group, while specific actions are defined later in the Complaint.

4. The repetitive nature of the text messages along with formatting shown in Exhibit C, indicate that the Defendants' messages were made using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1). The automatic telephone dialing system has the <u>capacity</u> to store or produce telephone numbers to be called or texted, using a random or sequential number generator.

5. Plaintiff has never had any sort of relationship with the Defendants, be it business or otherwise. Plaintiff has never had any prior contacts with the Defendants.

6. Plaintiff has never requested by written agreement or otherwise that he be contacted by Defendants.

7. Plaintiff has never provided his cellular telephone number to Defendants and never provided his consent to Defendants to be contacted on his cellular telephone.

8. Plaintiff is unaware of how Defendants obtained his cellular telephone number.

9. Defendants obtained Plaintiff's telephone number without Plaintiff's knowledge or consent.

10. The messages from Defendants were for marketing and soliciting purposes only.

11. Defendants has called Plaintiff's cellular telephone for non-emergency purposes which is prohibited by 47 U.S.C. § 227(b)(1)(A)(iii).

12. Plaintiff has never provided his express consent to receive any calls or texts from Defendants to Plaintiff's cellular telephone.

13. Futero's role in the offending calls are alleged to be a subset or combination of:

  i. the capacity for (and use of) an autodialing function that Futero provides as knowingly in violation of the TCPA;

  ii. all text messages for marketing purposes sent to Plaintiff;

  iii. a portion (nine) of the text messages contained the toll-free number 855-790-6802 or and 855-579-9182 for which Five9 actively managed the request, instruction, or command as previously discussed, including ratification for Futero of their proper use of the toll-free number and its proper identification;

  iv. the toll-free number inbound calls were managed by FIVE9, for them to profit from the toll charges while relaying back caller-ID and other caller metadata to Futero.

14. Per the FCC Commission, "So long as the initiating device has the requisite <u>capacity</u> to meet the statutory definition of an autodialer and sends a text message, which the Commission has deemed a call, the fact that the message is initiated from a phone versus some other device is not relevant. (See 2003 TCPA Order, 18 FCC Rcd at 14115, para. 165; see also Joffe v. Acacia Mortgage Corporation, 121 P.3d 831 at 836-37 (Az. Ct. App. 2006), cert. denied, 549 U.S. 1111 (2006); Intergovernmental Advisory Committee to the Federal Communications Commission, Advisory Recommendation No: 2015-6 at para. 10 (May 15, 2015).

## <u>CAUSE OF ACTION</u>

### Violations of the Telephone Consumer Protection Act: 47 U.S.C. § 227 *et seq.*

1. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein.

2. A text message is a "call" within the meaning of the TCPA statute, allowing variations of the word "call" to be substituted for "text message" throughout

this Complaint. (Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009).

3. The FCC's May 2013 ruling on applicability and rulemaking for the TCPA in "In re Dish Network, LLC" (United States v. DISH Network, LLC, 2011 WL 475067 *4 (C.D. Ill. 2011); see also Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 465-66, 468 (6th Cir. 2010)) establishes and confirms "vicarious liability" on the part of vendors/providers (such as FIVE9), as well as apparent authority and ratification. The FCC adopted the position that liability for vendors exists under the TCPA by end companies engaging a vendor to make communications to cell phones and "knowingly accepting their benefits" – these benefits being the revenue and profit received by FIVE9 from companies using FIVE9's services and networks. Formal ratification is not required (under the FCC Dish ruling) to establish a vendor relationship, though Plaintiff alleges that formal ratification did have to occur since Five9 had to approve use of the toll-free number used in text messages sent by Futero, as previously described. Liability for vendor conduct arises (in this case, FIVE9) when a person believes a vendor is acting as another's agent, the belief is reasonable if the company that hired the vendor did something to foster the belief that the vendor was acting as its agent, such providing some function associated with text messages, notably with a toll-free number to induce and enable/support sales, even if FIVE9 were or were not the text message sender – FIVE9 clearly provided and serviced the toll-free number used in the text messages, which were integral to consumers' responses, caller-ID and metadata, etc., being relayed back to Futero via processes and formats controls and defined by Five9.

4. Without prior express consent, Defendants contacted Plaintiff on his cellular telephones using a system or device with the capacity to utilize an automatic telephone dialing system or an artificial or prerecorded voice, in violation of 47 U.S.C. §227(b)(1)(A)(iii).

14

5. Defendants placed these calls knowing that it lacked consent to call Plaintiff. As such, each called placed to Plaintiff was made in knowing and/or willful violation of the TCPA, and is subject to treble damages pursuant to 47 U.S.C. §227(b)(3)(C).

6. Plaintiff is informed and believes that the violation of 47 U.S.C. § 227(b)(1)(A)(iii) by Defendants was willful and in accordance with Defendants' standard business procedures. In the alternative, plaintiff is informed and believes that Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii) were negligent and willful.

7. Under Meyer v. Bebe Stores (N.D. Cal. Feb. 2, 2015), Article III standing and a cause of action is confirmed, including via text messages.

8. Under Booth v. Appstack, Inc. (W.D. Wash. May 24, 2016), and Rogers v. Capital One Bank (N.D. Ga. June 7, 2016), concrete injury under the TCPA is affirmed.

9. As a result of each call made in negligent violation of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B). Treble damages ($1500 per "call") are defined for each violation determined to be willful and/or knowing pursuant to 47 U.S.C. §227(b)(3)(C);

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants:

1. Plaintiff asserts that the repeated quantity of calls (text messages), plus requirement that they be sent specifically to the Defendants' phone number, and lack of any opt-in or agreeing response, fulfills the negligent, willful, and knowing conduct aspects of the TCPA damages clause.

2. For each of the illegal text messages sent by Futero, Plaintiff prays for relief in the amount of $500 times the treble damages for each violation (16*1500)

15

or $24,000, in addition to court costs and expenses, while reserving the option to amend this Complaint and Demand if further "calls" (or texts) are received by the Plaintiff prior to any conclusion, judgment, or settlement of this case.

3. For each of the illegal text messages supported by Five9's toll-free number, which supports a separate cause of action for TCPA liability and amounts to nine messages, Plaintiff also prays for relief in the amount of $500 times the treble damages for each violation (9*1500) or $13,500, in addition to court costs and expenses, while reserving the option to amend this Complaint and Demand if further "calls" (or texts) are received by the Plaintiff prior to any conclusion, judgment, or settlement of this case.

4. Total claimed monetary damages are therefore $24,000 + $13,500 = $37,500, plus court costs and expenses.

5. Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) and prospective injunctive relief on behalf of the general public requiring Defendants to comply with the above cited provisions of the TCPA;

6. Such other and further relief as may be just and proper.

# EXHIBIT A

Five9: "Five9 is willing to help by providing you with the subscriber information for the number in the body of the text message. In exchange, Five9 simply asks that you release it from a lawsuit that should never have been filed in the first place."

Plaintiff's Response: Plaintiff would gladly agree, but Five9 has refused to provide the information until AFTER they are dismissed with prejudice, making it likely that they will provide false and/or misleading information to protect their business partners in illegal activities. Five9 realizes this issue, but refuses to provide any information until after Plaintiff would have no enforceable recourse.

**Email proof of Five9's incalcitrance is listed on the next page.**

Note: Rule 408 does not preclude admissibility of conversations. FRCP 408(b): "The court may admit this evidence for another purpose, [not limited to] such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

Clearly, refusing to name Five9's client without immunity and compensation negates Five9's denial of undue delay, and supports Plaintiff's claim that Five9 is obstructing a civil case. Upon further Discovery, evidence may lend itself to criminal charges from the Contra Costa County District Attorney, and DOJ, with whom Plaintiff is now cooperating. The code below is a criminal statute, and therefore only enforceable by criminal prosecutors. However, criminal prosecutors (State and Federal) are now monitoring this case to assess if Discovery indicates that Five9's and their partner telemarketers' illegal activities are limited to California, or also cross State lines.

"California Business and Professions Code §§ 17538.41. (a) (1) Except as provided in subdivision (b), (c), (d), or (e), no person, entity conducting business, candidate, or political committee in this state shall transmit, or cause to be transmitted, a text message advertisement to a mobile telephony services handset, pager, or two-way messaging device that is equipped with short message capability or any similar capability allowing the transmission of text messages. A text message advertisement is a message, the principal purpose of which is to promote the sale of goods or services, or to promote a political purpose or objective, to the recipient, and consisting of advertising material for the lease, sale, rental, gift offer, or other

1    disposition of any realty, goods, services, or extension of credit, or advertising
2    material for political purposes."

3                                                              about:blank

---

------- Forwarded Message -------
Subject: RE: Complaint re Five9, Inc.
Date: Fri, 13 Jan 2017 23:14:58 +0000
From: Elg, Spencer <SElg@KelleyDrye.com>
To: 'James@xllidev.com' <james@xllidev.com>
CC: Hutnik, Alysa <AHutnik@KelleyDrye.com>

CONFIDENTIAL – RULE 408 OFFER TO COMPROMISE

Dear Mr. Linlor,

Thank you for speaking with me and my colleague yesterday.

As we explained to you, Five9 had nothing to do with placing or initiating the text messages that are the subject of your complaint.  Five9 did not send the text messages, or authorize anyone to send the text messages to you.  In fact, Five9 had no knowledge at all about the text messages until receipt of your lawsuit.  Not only that, the only connection that exists between the text messages and Five9 is that a number that was written within the body of the text messages (which was not the number identified as sending the text messages) may be associated with a subscriber who may use Five9's services.

There is no legal basis for liability under the TCPA against Five9.  Five9 cannot be directly liable because it did not send the text messages or cause them to be sent.  Five9 cannot be vicariously liable for many reasons, including that it had no knowledge of the text messages, did not play any role in sending the text messages, and did not even supply the platform from which the text messages were sent.

We understand your desire to pursue whoever is responsible for sending the text messages that form the basis for your complaint.  Five9 is willing to help by providing you with the subscriber information for the number in the body of the text messages.  In exchange, Five9 simply asks that you release it from a lawsuit that should never have been filed against Five9 in the first place.

If you will agree to release Five9 from this lawsuit with a confidential, general release of any claims against Five9, Five9 is prepared to provide you with the name of the subscriber and to pay you one thousand dollars ($1,000).

If you do not agree, Five9 will proceed with defending this action, including seeking to hold you responsible for costs incurred in dismissing this frivolous lawsuit.

Please let us know by the end of the day Monday, January 16, whether you will agree to these terms.

Sincerely,

Spencer Elg
S. Spencer Elg
Kelley Drye & Warren LLP
(202) 342-8466 | selg@kelleydrye.com

From: Elg, Spencer
Sent: Thursday, January 12, 2017 10:23 AM
To: 'James@xllidev.com' <james@xllidev.com>
Cc: Hutnik, Alysa <AHutnik@KelleyDrye.com>
Subject: RE: Complaint re Five9, Inc.

Dear Mr. Linlor,

Please let me know if there is a time today that we can discuss.  I am available any time other than 9-11 PT.

Thank you,

Spencer Elg
S. Spencer Elg
Kelley Drye & Warren LLP
(202) 342-8466 | selg@kelleydrye.com

From: James [mailto:james@xllidev.com]
Sent: Tuesday, January 10, 2017 12:22 PM
To: Elg, Spencer <SElg@KelleyDrye.com>
Cc: Hutnik, Alysa <AHutnik@KelleyDrye.com>
Subject: Re: Complaint re Five9, Inc.

Will you please identify the company served by the Five9-serviced number 855-790-6802 ?

Where does it terminate (full legal info and history of Five9's association with that account)?

Thank you.

On 1/10/2017 9:05 AM, James wrote:
     618-69 initiating

      On 1/10/2017 8:27 AM, Elg, Spencer wrote:

        Dear Mr. Linlor,

        Thank you for the information about the phone number that appears in the body of the text messages.  Unfortunately, however, we need the phone number or short code for the number from which the texts originated.

        Could you please provide us with the phone number(s) or short code(s) identified in your caller ID as initiating the text messages?

## EXHIBIT B

Copies of website showing ownership of shortcode 61869 by Futero:



Another part of the Futero website shows that they own and use two shortcodes: 61869 and 76965. These shortcodes are listed near the bottom of this webpage; the URL for Futero is in the title bar:



19

The AidingStudents.com website (the URL in the image below) lists
AidingStudentsRelief.com on the bottom of the same image below, both
owned/managed by Futero Inc., and both listing the contacts:
info@aidingstudents.com and (888) 457-0755.  Five9 also services the phone # for
AidingStudents.com (see below).  This same -0755 phone number is also listed on
Facebook for AidingStudents.com.  This shows Five9 is closely involved in
Futero's operations, beyond merely as part of Five9's control, means, and
ratification of Futero's text message marketing.  It makes sense that since Futero
was using Five9 for their toll-free services, that Futero would use Five9, and as
demonstrated, follow Five9's instructions and get Five9's ratification for consumer
call-convertible (to sales) for the text messages sent by Futero under 61869.



**AIDINGSTUDENT**RELIEF     HOME   SERVICES   ABOUT US   FAQ   BLOG   CONTACT US   |   Q

Text JOINFI2 to 61869 to receive financial counseling notifications from Futero. 30 msgs/mo. Message and Data Rates May Apply.

For additional information, text HELP to shortcode 61869. You may opt out at anytime by sending STOP to shortcode 61869. Contact us at support@futero.com or (855) 500-9008.

Text MMSREFI to 61869 to receive financial counseling notifications from Futero. 30 msgs/month. Message and data rates may apply.

For additional information, text HELP to shortcode 61869. You may opt out at anytime by sending STOP to shortcode 61869. Contact us at support@futero.com or (855) 500-9008.

SMS/MMS Terms and Conditions

Subscription Service available on most carriers including U.S. Cellular, AT&T, Cellular One, T-Mobile, Sprint, Boost, MetroPCS, Verizon Wireless, Alltel Wireless and Virgin Mobile. Msg & Data Rates May Apply. Requires text-enabled handset. You may cancel your subscription by texting STOP to 61869. You can also get info directly on your phone by texting HELP to 61869 or contacting us at support@futero.com or (855) 500-9008. Service will continue until customer cancels. Carriers are not responsible for delayed or undelivered messages.

Privacy

Futero respects your privacy. We will not share or use your mobile number for any other purpose. We will only use information you provide to transmit your text message. Nonetheless, we reserve the right at all times to disclose any information as necessary to satisfy any law, regulation or governmental request, to avoid liability, or to protect our rights or property. When you complete forms online or otherwise provide us information in connection with the Service, you agree to provide accurate, complete and true information. You agree not to use a false or misleading name or a name that you are not authorized to use. If we, in our sole discretion, believe that any such information is untrue, inaccurate or incomplete, we may refuse you access to the Service and pursue any appropriate legal remedies.

Checkout

## Who Owns This Number?

(888) 457-0755

Type what you see below

See Who Owns It

| Company : FIVE 9, INC. |  |
| --- | --- |
| Referral #:925-201-2207 |  |
| **History** |  |
| **Status** | **Last Update** |
| WORKING | 2016-06-01 |
| ASSIGNED | 2016-06-01 |
| RESERVED | 2016-06-01 |
| SPARE | 2016-03-31 |
| TRANSIT | 2016-03-02 |
| DISCONN | 2016-03-02 |
| WORKING | 2015-09-16 |
| ASSIGNED | 2015-09-16 |
| RESERVED | 2015-09-08 |
| RESERVED | 2015-09-04 |
| SPARE | 2015-09-04 |
| TRANSIT | 2015-09-04 |
| DISCONN | 2015-05-04 |
| WORKING | 2015-04-06 |
| WORKING | 2014-12-26 |
| ASSIGNED | 2014-12-26 |
| TRANSIT | 2014-09-02 |
| TRANSIT | 2014-09-02 |
| DISCONN | 2014-09-02 |
| WORKING | 2014-08-05 |
| ASSIGNED | 2014-08-04 |
| RESERVED | 2014-08-02 |
| SPARE | 2014-08-02 |
| TRANSIT | 2014-08-02 |
| DISCONN | 2014-08-02 |
| WORKING | 2011-01-19 |
| WORKING | 2011-01-13 |
| WORKING | 2011-01-06 |
| WORKING | 2010-07-28 |
| ASSIGNED | 2010-07-27 |
| ASSIGNED | 2010-07-27 |

onal or business use. We

ster than anywhere else and

!66, 855, and 844 numbers.

ny you want for ongoing

21

1

2

# EXHIBIT C

3  Copies of 12 text messages sent by Futero to Plaintiff's cellphones, with Futero as

4  the holder of shortcode 61869, with 9 of the the callback number (sales conversion

   phone number) controlled in the manner and means of the sales contact routing,

5  call-ID, metadata, etc, by Five9.  Plaintiff alleges separate (individual) causes of

6  action, for 12 messages sent by Futero, plus 9 messages controlled in manner and

   means by Five 9, for 21 total TCPA violations.

7

8

9

10  

11

12

13  Note that Plaintiff never "chatted" with the sender nor approved any text messages.

14  Plaintiff has received hundreds of telemarketing phone calls, but if an additional

15  phone call can be identified, then Plaintiff requests Leave to add that caller and

    damages for that additional TCPA violation.

16

17  

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



23

The last three text message groups were actually multiple text messages.
Though only Futero was involved in those (not Five 9), that pushes the number of
text messages from 12 up to 16 messages by Futero.  Multiple messages are
individual causes of action and case law has held them as available for remedy.



Illegal text messages above are being sent advertising the ph # 855-790-6802 or
855-579-9182, where Five9 both makes money off each inbound call, plus relays
customers' personal phone number and information (metadata) back to the
telemarketer, involving Five9 in operations and obviating common carrier
immunity as previously discussed.  Plaintiff finally called to the phone number
855-790-6802 to see if Plaintiff could be removed from their call list. 855-790-
6802  calls to AidingStudents.com (and AidNest.com), with different greetings
given depending on the time of day.  855-790-6802 terminates at a "boileroom"
call center, which had no interest or process for removing Plaintiff's phone
numbers from their lists.

24



The AidingStudents.com website, owned/managed by requested substituted John Doe (Futero, Inc) lists the contacts: info@aidingstudents.com and (888) 457-0755. Five9 also services the phone # for AidingStudents.com.  This same -0755 phone number is also listed on Facebook for AidingStudents.com.  This is beyond common carriage, and shows Five9 is closely involved in Futero's operations.



NO ATTORNEY ASSISTED IN THE PREPARATION OF THIS DOCUMENT.

I certify that all statements made in this document are true and correct, under penalty of perjury, and was served on all named Defendants' Counsel via EC/EMF from filing with the Court.

_____                    ___7/28/17___

signed                                      date


James Linlor, pro per
PO Box 231593, Encinitas, CA  92023
(858) 504-0584

FIVE9, INC. c/o Kelly Drye and Warren LLP
Lee Brenner #180235
Los Angeles, CA  90067  (310) 712-6100

Futero, Inc., Counsel not yet named
1500 W 13TH ST, UPLAND, CA 91786

26