**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES LINLOR,<br><br>         Plaintiff,<br><br>v.<br><br>FIVE9, INC., et al.,<br><br>         Defendants. | Case No.: 17cv218-MMA (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 29] |

  On February 3, 2017, Defendant Five9, Inc. ("Five9") removed this action from the Superior Court of California, County of San Diego. *See* Doc. No. 1. In the Second Amended Complaint ("SAC"), Plaintiff James Linlor, proceeding *pro se*, alleges Defendants Five9, Futero, Inc. ("Futero"), and other unnamed defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). *See* Doc. No. 27 ("SAC"). Five9 moves to dismiss Plaintiff's SAC under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 29-1 ("MTD"). Plaintiff filed an opposition [Doc. No. 31 ("Oppo.")] and Five9 filed a reply [Doc. No. 32 ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 35. For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

# BACKGROUND[1]

The SAC asserts claims for violations of the TCPA against Defendants Five9, Futero, and other unnamed defendants, whom Plaintiff refers to as "John Does #1-#9." SAC. Plaintiff alleges Five9 "is in the business of providing customer contact center solutions, including, but not limited to, predictive and autodialers, and inbound call management, including toll-free numbers." SAC, p. 11.

Plaintiff alleges that in approximately October 2016, "Defendants began sending texts to Plaintiff's cellular telephone number." *Id.* Specifically, Plaintiff alleges he received "[a]t least sixteen (16) text messages . . . during 2016 and 2017." SAC, pp. 11-12. Plaintiff alleges that the "repetitive nature of the text messages . . . indicate that Defendants' messages were made using an 'automatic telephone dialing system,' as defined by 47 U.S.C. § 227(a)(1)." SAC, p. 12. The SAC states that Five9 "was identified as the teleco operator/agent responsible for toll-free #s 855-790-6802 and 855-579-9182 identified in SMS messages sent to the Plaintiff's cell phones." SAC, p. 11. Plaintiff alleges he does not have a relationship with Defendants, did not provide his cellular telephone number to Defendants, and did not consent to be contacted. SAC, p. 12.

Plaintiff alleges Futero is directly liable for violating the TCPA because it "is identified as the text message sender through its SMS . . . shortcode 61869 . . , which is also listed as owned by Futero . . . ." SAC, p. 7. Plaintiff contends Five9 is vicariously liable for violating the TCPA because Five9 provided Futero with the toll-free numbers that sent the text messages to Plaintiff. SAC, p. 2. Plaintiff alleges that Five9 controls or has the right to control "the manner and means of the text message campaign Futero . . . conducted" because Five9 formatted the toll-free numbers given to Futero to permit them

---

[1] Because this matter is before the court on a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the operative complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

"to receive calls, . . . route, or hold, or process calls during inbound burst volumes, . . . [and] pass back caller-ID information or other metadata from Five9 to Futero." SAC, pp. 2-3. Plaintiff further alleges that Five9 receives payment from Futero for this service. SAC, p. 3. Plaintiff contends that Five9 managed the toll-free number inbound calls and profited "from the toll charges while relaying back caller-ID and other caller metadata to Futero." SAC, p. 13.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Twombly*, 550 U.S. at 557. The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). However, a *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts must construe such pleadings liberally. *Id.*

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

In the SAC, Plaintiff does not allege Five9 is directly liable for violating the TCPA, as Plaintiff admits Five9 did not send the text messages at issue. *See* SAC, p. 12-13 (stating that Futero sent all of the text messages). Rather, Plaintiff asserts Five9 is vicariously liable for TCPA violations. SAC, p. 1.

The Ninth Circuit has assumed that "Congress intended to apply" "ordinary tort-related vicarious liability rules" to TCPA claims. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 136 S.Ct. 663, 674 (2016), *as revised* (Feb. 9, 2016) (deferring also to the Federal Communications Commission's ruling that there may be vicarious liability for TCPA violations under federal common law agency principles). In other words, a defendant may be vicariously liable for a third-party caller's TCPA violations where the plaintiff demonstrates an agency relationship between the defendant and the third-party caller. *Id.* The FCC has instructed that vicarious liability under the TCPA could be established "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6584 (2013); *see also Gomez*, 768 F.3d at 877-78.

Plaintiff argues that Five9 may be vicariously liable under three theories: (1) actual authority; (2) apparent authority; and (3) ratification. *See* Oppo. at 8-10. Five9 moves to dismiss the SAC with prejudice on the grounds that it is not vicariously liable for Futero's and the other unnamed defendants' alleged TCPA violations. MTD at 11.

1. **Actual Authority**

Under traditional agency principles, "[a]n entity may be liable for actions it did not itself take when the unlawful acts were performed by an agent of the entity." *Henderson*

*v. United Student Aid Funds, Inc.*, No. 13CV1845 JLS (BLM), 2017 WL 766548, at *6 (S.D. Cal. Feb. 28, 2017) (citing Restatement (Third) of Agency (2006)). "An agency relationship forms 'when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Trenz v. Sirius Xm Radio, Inc.*, No. 15CV0044 AJB (NLS), 2015 WL 11658715, at *2 (S.D. Cal. July 13, 2015) (quoting *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2015 WL 925892, at *4 (N.D. Cal. Mar. 2, 2015) (citing Restatement (Third) of Agency § 1.01 (2006)).

Plaintiff alleges that Five9 had "control or . . . the right to control the manner and means of the text message campaign Futero . . . conducted." *See* SAC, p. 2. Specifically, he alleges that Five9 controlled the "formatting of the text message to include a reply mechanism," and "how toll free numbers would be established, managed, routed/queued for operator response, and caller-ID, other caller data, and statistical data relayed back for QoS and data mining for effectiveness of the text message campaign." *Id.* Plaintiff explains that "Futero could not control the manner and means itself—if Futero chose the toll-free number without being directed by Five9 as to what Five9 had set up, then the toll-free number would not function to receive calls, nor to route, or hold, or process calls during inbound burst volumes, nor pass back caller-ID information or other metadata from Five9 to Futero." SAC, p. 3.

"Agency means more than mere passive permission; it involves request, instruction, or command." *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931). Plaintiff does not allege that Five9 directed or supervised the manner and means of the text message campaign conducted by Futero or unnamed defendants. He does not allege that Five9 created or developed the content of the text messages, nor that Five9 played any role in sending the text messages beyond provisioning the inbound toll-free number used by Futero or unnamed defendants. *See* SAC. Plaintiff merely alleges that Five9 provided a toll-free number with specifications permitting replies to the text messages and saving

5

caller and statistical data.  *See id.*  In other words, Plaintiff alleges that Five9 controlled the manner and means of the specifications of the toll-free phone number provided to Futero, not the manner and means of the substantive content of the text messages.  This is insufficient to allege that Five9 requested, instructed, or commanded that Futero or unnamed defendants send out the text messages alleged to violate the TCPA.  *See United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) ("To form an agency relationship, both the principal and agent must manifest assent to the principal's right to control the agent.").  Thus, Plaintiff has not alleged Five9 had any control over Futero or the unnamed defendants for sending the text messages, nor that they acted in any way on Five9's behalf.  Because Plaintiff fails to allege an agency relationship, he also fails to allege that Five9 had express or actual authority over the entity that sent the alleged text messages.

2. *Apparent Authority*

Apparent authority "can only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied'" to the plaintiff's detriment.  *Thomas v. Taco Bell Corp.*, 582 Fed. App'x 678, 679 (9th Cir. 2014) (quoting *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)).  Plaintiff argues that apparent authority exists because "[a]fter Futero composed the text message to be sent out via Futero's shortcode, Five9 still had to ratify and approve the toll-free number as being the correct number that Futero had included per Five9's direction."  SAC, p. 5; *see* Oppo. at 9.  Plaintiff does not allege that he relied to his detriment on something Five9 did or said with respect to Futero's or the unnamed defendants' authority to send the text messages.  *See Thomas*, 582 Fed. App'x at 679-80.  As a result, Plaintiff fails to allege that Futero or the unnamed defendants acted with apparent authority.

3. *Ratification*

"Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning

6

without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003). As discussed above, Plaintiff fails to sufficiently allege a principal-agent relationship. Therefore, Plaintiff cannot allege ratification.

## Conclusion

Based on the foregoing, the Court **GRANTS** Five9's Motion to Dismiss Plaintiff's Second Amended Complaint and **DISMISSES** Plaintiff's claims against Defendant Five9, Inc. *See Knappenberger*, 566 F.3d at 942 (stating that leave to amend should be granted unless amendment would be futile). The Clerk of Court is instructed to terminate the action as to Defendant Five9, Inc.

**IT IS SO ORDERED**.

Dated: November 29, 2017

Hon. Michael M. Anello
United States District Judge